

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL


Hon. W. J. McConnell, President
North Texas State Teachers College
Denton, Texas

Dear Sir:  Opinion No. O-6932
Re: Whether the City of Denton
must furnish water free of
cost for use by the North
Texas State Teachers College,
or whether the College may
pay for same.

This is in further reference to your letter
of November 9, 1945 which reads in part as follows:

"In the negotiations between the
State of Texas and the City of Denton in 1899
relative to the location of North Texas State
Normal College, now known as North Texas State
Teachers College, there was a provision relative
to the supplying of water by the City of Denton
for the use of said school.

" . . .

"Your opinion is respectfully re-
quested in regard to the following questions:

"1. Is the City of Denton legally
bound to furnish for the use of said school an
abundant supply of pure artesian water free of
cost to the State for all purposes of said
school?

"2. May North Texas State Teachers
College legally compensate the City of Denton
for water used by the institution?

"3. May North Texas State Teachers
College legally compensate the City of Denton
for water supplied to an extra-mural or auxiliary

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. W. J. McConnell - Page 2

enterprise, such as a self-supporting dormitory?"

The Act of the Legislature authorizing the establishment of North Texas State Normal College is found in General Laws of Texas, Acts 26th Legislature, Regular Session, 1899, page 74, and reads in part as follows:

"An Act to provide for the establishment, maintenance and government of a State Normal School to be located at Denton, Texas, and be known as the North Texas State Normal College.

"Section 1.  'Be it enacted by the Legislature of the State of Texas:  That there shall be established at the college heretofore known as the North Texas State Normal College at Denton, in the County of Denton, Texas, a normal school to be known as the North Texas State Normal College; provided, that the citizens and municipal authorities of said city of Denton shall, within sixty days after this act takes effect, convey or cause to be conveyed to the State of Texas, by a good and perfect title, the buildings, grounds and other property belonging to or used by the said North Texas Normal College, and bind the city of Denton to furnish for the use of said school an abundant supply of pure artesian water free of cost to the State, for all the purposes of said school, which said conveyance and obligation shall be approved by the Governor and Attorney General; provided, that said college building, when tendered and accepted, shall be sufficient to accommodate at least four hundred pupils; and provided further, that if the donation and proposition mentioned herein is not fully complied with by the city of Denton to the satisfaction of the Governor, Comptroller and Superintendent of Public Instruction, then the location of such normal college shall be open to such other place as the Governor, Comptroller and Superintendent of Public Instruction may deem most satisfactory and advantageous to the State.

"   .  .  .

"Approved March 31, 1899 - Takes effect 90 days after adjournment."

Hon. W. J. McConnell - Page 3

After the above Act was passed by the Legislature, the City of Denton on October 10, 1899, by proper action of its governing body, passed a resolution reading in part as follows:

"WHEREAS, by virtue of an Act of the 26th Legislature, being Chapter 53, Laws 1899, the State of Texas proposes to establish at the College heretofore known as the North Texas State Normal College, at Denton, in the County of Denton, Texas, a normal school to be known as the North Texas State Normal College; provided that the citizens and municipal authorities of said City of Denton shall, within sixty days after the taking effect of said Act, convey or cause to be conveyed to the State of Texas, by good and perfect title, the buildings, grounds, and other property belonging to or used by the said North Texas Normal College, and bind the City of Denton to furnish for the use of said school an abundant supply of artesian water free of cost to the State for all the purposes of said school; . . ."

Subsequent thereto the Mayor of Denton, Mr. O. P. Poe, properly executed an instrument, parts of which are quoted below, in keeping with instructions and authority given him by the City Council, in conjunction with the Act of the 26th Legislature above mentioned:

"WHEREAS, by resolution passed by the City Council of the City of Denton on the 10th day of October, 1899, the Mayor of said city was authorized and instructed for and in behalf of said city to execute and enter into an obligation in writing, binding the City of Denton to furnish for the use of the NORTH TEXAS STATE NORMAL COLLEGE an abundant supply of pure artesian water free of cost to the State according to the terms of an act of the 26th Legislature being Chapter 53, Laws 1899.

"NOW THEREFORE I, O. P. Poe, Mayor of
the City of Denton by virtue of said resolution
and in consideration of the establishment at
Denton of the NORTH TEXAS STATE NORMAL COLLEGE
as provided in said act above referred to, acting
for and in behalf of said City do hereby covenant
and agree and bind the said City of Denton to
furnish for the use of said North Texas State
Normal School an abundant supply of pure artesian
water free of cost to the State of Texas for all
the purposes of said school."

The question before us is whether or not there was
ever a legal and binding contract in existence as a result of the
above acts and if so, is the City of Denton bound at this time
to furnish water free of cost to the College. An exhaustive
search of the authorities has been made by this department and
although we have not found a case decided by our Supreme Court
directly in point, we believe the following holdings in which
similar questions were up for consideration support our con-
tention that the contract was in all respects legal and binding
upon the city.

In 30 Tex. Juris., p. 115, paragraph 56 we find the
following language:

"A municipal corporation cannot, by contract
or otherwise, surrender, delegate, or barter away
its governmental or legislative function or powers
whose uses and continued availability are essential
to the public good; nor can it legally enter into
any contract which will embarrass, prevent, control
or interfere with its future exercise of such powers.
A statute which attempts to give it authority so to
do violates the constitutional inhibition against
irrevocable or uncontrollable grants of special
privileges or immunities." (See Bowers v. City of
Taylor, 24 S. W. (2d) 816, holding that R. S. 1925
Articles 1018-1020, violate Const. Art. 1, paragraph
17, in so far as they permit a city to close and
vest conclusive control of a street in a railroad
company for 15 years.

Article 1, Section 17 of our Constitution reads as follows:

"No _person's_ property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, _when taken except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges and immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof._" (Underscoring ours)

In Foster et al v. City of Waco, et al, our Supreme Court, 255 S. W. 1104, held:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: _First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared affects and purposes of the corporation --not simply convenient, but indispensable._ Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. _Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto._ All acts beyond the scope of the powers granted are void." (Underscoring ours)

In City of Corpus Christi v. Central Wharf & Whse. Co., et al, C. C. A. 1894, 27 S. W. 803, the following language is found:

"At most their action was in excess of the powers conferred. The restrictions upon the powers of a city government are imposed by law for the protection of the inhabitants of the city and the general public. By proper proceedings, taken by the right parties in due time, all such trans-

gressions of power may be promptly remedied. But, when such contracts have been allowed to stand until fully carried out, it does not lie in the mouth of the party who received their benefits to urge the defense of ultra vires." (Underscoring ours).

Also, see Bowers v. City of Taylor, et al, 24 S.W. (2) 816, where it was held that Articles 1018 to 1020, R. S. 1925, "were invalid in so far as it permits the surrender by a city, whether by contract or otherwise, of its legislative powers and duties, or which amount to an abdication of its governmental functions or of its police power, and because of the constitutional inhibition against irrevocable or uncontrollable grants of special privileges or immunities. (Const. Art. I, Sec. 17)."

In the case of City of Brenham v. Brenham Water Company, 4 S. W. 143, Supreme Court of Texas, holding: "A city ordinance granted to a water company the right and privilege for the term of 25 years from the adoption of this ordinance of supplying the city of B., and the inhabitants thereof, with water for domestic and other purposes, and for the extinguishment of fires . . . . . Power given to a municipal corporation to contract in relation to a given subject matter does not carry, by implication, the power to contract, even with reference to that, so as to embarrass and interfere with its future control over the matter, as the public interest may require."

International & G. N. Ry. Co. v. Anderson County, et al, 174 S. W. 305, held Legislature could pass valid law requiring corporation to whom it had issued charter to keep offices in certain locality indefinitely.

In 149 S. W. 777, Belden v. City of Niagara Falls, N. Y. Supreme Court, in the absence of express authority from the Legislature, municipalities may not make contracts limiting the exercise of such governmental functions, 245 N.Y.S. 511.

In City of Teague v. Sheffield, 26 S. W. (2) 417, Judge Gallagher of Court of Civil Appeals quoted Chief Justice Conner as follows:

"A municipal corporation has no power to cede away or embarrass the exercise of its legis- lative or governmental powers or functions by contracts with others so as to disable it from the

Hon. W. J. McConnell - Page 7

performance of its public duties or from controlling in the future as it may deem best its municipal affairs, and when a contract is made by such corporation which is not warranted by the statutory authority conferred upon it, the governing body of such city has at all times the right to declare it void and to refuse compliance therewith." (Underscoring ours)

In Harkins v. Orlando, 51 F. (2d) 901, it was stated:

"In absence of statute, municipal contract can be for a reasonable time only even in the exercise of proprietory functions." (Underscoring ours)

McQuillin Municipal Corporations, Vol. 3, Sec. 1355, page 1279, recites:

"If there is no such provision (as to number of years), the reasonableness of the time is presented for decision; and contracts for 50 years, 30 years, 25 years and like periods have been held valid. So where a city was authorized to contract for a water supply without limitations as to terms, a provision to pay a certain sum yearly for 20 years for water supplied to hydrants of the city, thereafter the water for said hydrants to be supplied free of charge; was held to be within the power of the city and binding on the company. Belfort v. Belfort, Water Co., 98 Atl. 738." (Underscoring ours)

We are mindful of the fact that the cases cited hereinabove all are based on contracts which the cities had made or attempted to make with individuals or corporations and none concerned contractual relations with the State. We think the law to be well settled on the question of the power of a city government acting in its proprietory capacity, to enter into contracts the performance of which would extend well beyond the tenure of office of those city officials serving at the time of the award. In City of Crosbyton v. Texas-New Mexico Utilities Co., 157 S.W.(2)418, the Court of Civil Appeals held:(Reh.Den.) "A city may exercise its proprietory or business functions, as by entering into contract for private interests

Hon. W. J. McConnell - Page 8

of its inhabitants or itself, in same way and to same extent as individuals or private corporations."

We think the contract under consideration in this opinion is clearly one involving proprietory acts of the city. In addition to the implied authority the city would have to enter into such a contract by virtue of its charter, the Legislature, the very creator of the City of Denton and from which body said city derives all its authority, recognized and further extended the authority of the city to so act when it passed the Bill authorizing the establishment of North Texas State Normal College contingent upon the execution of the agreement as hereinabove quoted. (See El Paso v. Conklin, 44 S. W. 989)

It is the considered opinion of this department that the City of Denton was acting within its authority at the time the agreement was made; that the contract was valid, that it is of a continuing nature and so long as the State of Texas maintains and operates the Teachers College at its present location, the City of Denton is legally bound to furnish water to the College free of cost.

It follows, therefore, that we must give negative answers to both your second and third questions. We think it was within the reasonable anticipation of the City that additions would be made to the College as it grew through the years, and the "extra-mural or auxiliary enterprise, such as a self-supporting dormitory", is certainly a product of normal college expansion.

Very truly yours

APPROVED JAN 18, 1946

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By

E. M. DeGeurin
Assistant

EDDeG:BT

